DETERMINED IN THE

## FOURTH DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1913.

---

## William T. Bonham, Defendant in Error, v. Winchester Repeating Arms Company, Plaintiff in Error.

1. EXPLOSIVES—*manufacture of fire arms.* Plaintiff lost his left thumb by the bursting of a shot gun and sued the manufacturer of the shell, under warranty, because of its defective condition. Skill and unremitting care were shown in such manufacture, and there was no evidence of defects in the particular shell. *Held,* that the facts did not warrant recovery of damages.

2. EXPLOSIVES—*manufacture of fire arms.* In an action for damages against a manufacturer of shells for injuries, caused by the bursting of a shot gun, where the evidence tends to show that such accident was due to an obstruction in the gun barrel, and not to any defect in the shell, the jury should have been peremptorily instructed to find the defendant not guilty.

3. NEGLIGENCE—*res ipsa loquitur.* The doctrine of *res ipsa loquitur* is not applicable unless the thing causing the accident is under the control of defendant or his servants.

Error to the Circuit Court of Wayne county; the Hon. JACOB R. CREIGHTON, Judge, presiding. Heard in this court at the March term, 1912. Reversed with finding of facts. Opinion filed March 10, 1913.

(469)

W. F. BUNDY, for plaintiff in error; BRISTOL, STODDARD, BEACH & FULLER, of counsel.

CREIGHTON & THOMAS, for defendant in error.

MR. JUSTICE HIGBEE delivered the opinion of the court.

On August 17, 1910, William T. Bonham, defendant in error, lost his left thumb, through the bursting of a shot gun he was firing. He afterwards brought suit against Winchester Repeating Arms Company, plaintiff in error, who had made and placed upon the market the shell he was using, claiming that the bursting of the gun barrel and consequent injury to him was caused by the defective and dangerous construction of the shell used and discharged by him at the time. There were three counts in the declaration. The first alleged, that said company was engaged in the manufacture and sale of loaded shot gun shells, charged with smokeless powder and leaden shot; that it warranted the same not to contain a sufficient quantity of powder or other explosive material, to render them dangerous or unsafe, while fired from a shot gun; that Bonham, relying on the warranty, purchased a box of said shells; that they contained large quantities of nitro glycerine and other high explosives; that they were so defective in their construction as to make them dangerous and unsafe to be used by Bonham in his shot gun; that while he, in the exercise of due care and caution, attempted to fire and discharge one of said shells from his shot gun, said shell, by reason of its defective construction and the large quantity of nitro glycerine and other high explosives contained therein, exploded with great force, tore a hole in the barrel of his shot gun and injured him. The second charged, that said shell contained such large quantities of smokeless powder, and the proportions of the component parts of said powder were so carelessly and improperly mixed, as to render said shell defective and dangerous to Bon-

ham in firing and discharging the same from his shot gun. The third, that said shell contained a quantity of smokeless powder, so carelessly, negligently and defectively made that the nitro glycerine and other high explosive, component parts therein contained, had sweated out of and exuded from its retaining material and thereby the rapidity and force of the explosion of said power had become so accelerated as to render said loaded shell dangerous to one using it, and wholly unfit to be fired in and discharged from any shot gun.

To this declaration the company filed a special plea in abatement to the jurisdiction of the court, stating it was a foreign corporation and that the person upon whom the service of summons had been made held no relation to the company that authorized him to accept or receive service of process. Issues were made up on this plea, a jury waived, and a trial had before the court. The finding was in favor of defendant in error and sustained the service of the summons and thereupon the company filed the general issue to the declaration. A trial upon the merits was had before a jury which found a verdict in favor of defendant in error for $500, for which amount judgment was given against said company. Plaintiff in error has assigned 31 errors and argued the same under numerous heads, but after a careful consideration of the whole case, we have concluded that it is only necessary for us here to discuss the error assigned on the refusal of the court below to give a peremptory instruction to the jury to find the defendant not guilty at the close of the evidence in the case.

The proofs showed that defendant in error Bonham, a lawyer, living in Fairfield, Illinois, went in a buggy on the morning of the day in question, to his brother's farm in a neighboring township, accompanied by a young man named Hilas Willis. He took with him an L. C. Smith, double barreled, hammerless shotgun, which he had owned about two years. He also had

with him 18 or 20 "Leader" shells taken from a package of 25 he had purchased from a local dealer the previous November. The gun had been cleaned by Willis the evening before and at that time he, his father and several others, looked through the barrels and found there were no obstructions in them. After the gun was cleaned, Willis put it in a case. On the way out to the farm, the gun was not fired but coming back Mr. Bonham, put it together for the purpose of shooting doves and during the afternoon discharged the right hand barrel five or six times with no unusual result. When, however, they had returned to within a short distance of Fairfield, Mr. Bonham got out of the buggy for the purpose of shooting a dove and, walking towards it, fired the right-hand barrel of the gun, but missed. He then for the first time that day fired the left-hand barrel, when the same bursted, 4½ to 5 inches from the breech end of the gun, making a hole in the barrel about two inches long with ragged edges, extending from the rib on the top of the barrel around to the underside. It also caused a swelling downward on a part of the barrel, showing a distinct bulge of a ring-like form. The explosion tore off the thumb on the left hand of the defendant in error. The powder used in the shells was known as Du Pont smokeless powder and was not manufactured by plaintiff in error, but was purchased by it from the Du Pont Nemours Powder Company and used by plaintiff in error in manufacturing shells. The powder was what was termed a slow burning powder, as compared with high explosives. It appears to have consisted mostly of gun cotton and was purchased in large quantities by the Winchester Company, which caused each lot purchased to be thoroughly tested in its laboratory. The proofs showed the shells were made in an automatic machine that stopped in case of any imperfect construction in the course of their manufacture; that cartridges were constantly taken at random from those being manufactured and fired to test whether the ma-

terial and construction were proper, about 2,000 being fired each day for that purpose. Quite a number of experts in the manufacture and use of powder and fire arms, and skilled workmen, were introduced on the part of plaintiff in error, to show the skill and unremitting care used by it in the manufacture of cartridges and no evidence was introduced to show that any of the cartridges used by Mr. Bonham the day in question, were possessed of any defects of construction. It is claimed, however, by him that the doctrine of *res ipsa loquitur* applies to this case and therefore that all that was necessary for him to show in proof, was that he purchased the shells manufactured by plaintiff in error, in a sealed box, that when firing one of them, there was an explosion which tore a hole in the gun and injured him.

In the case of Schaller v. Independent Brewing Ass'n, 225 Ill. 492, the death of appellee's intestate had been caused by an explosion which occurred while he was engaged in varnishing the inside of a beer tank. In order to enable the workmen to see to spread the varnish, it was necessary to have a light in the interior of the tank and an electric lamp attached to an extension cord was used for that purpose. The globe of this lamp appears to have been broken, thereby igniting gases of an explosive and inflammable nature, which were given off from the materials used in varnishing the tank, resulting in the explosion which caused the injury. The declaration charged the association with negligently failing to furnish and provide reasonably safe light in the tank, and that the explosion and consequent injury resulted therefrom. The position taken by the plaintiff in the trial court, was that the explosion itself was *prima facie* evidence of negligence of the defendant; that it was not necessary to show that the brewing association was negligent but that it devolved upon the association to show that it was not negligent. A judgment in favor of the

plaintiff below was reversed by the Appellate Court and the judgment of the Appellate Court was afterwards affirmed by the Supreme Court. The latter court, in its opinion, quotes approvingly, the language of the Appellate Court, which stated: "But a fatal objection of the application of the doctrine contended for,—the doctrine of *res ipsa loquitur*,—in this case is, that it is not applied unless the thing causing the accident is under the control of the defendant or his servants, and the electric lamp and its appliances in this case were not under the control of the defendant or its servants. * * * Here defendant only furnished the lamp, its appliances and the current. Winkofsky (the party who had the contract to do the varnishing) and his servants had the control of the lamp, and they, only, were in the tank when the explosion occurred."

In this case both the shell, which is claimed to have been defective and the implement used to discharge it, were under the control of defendant in error and an adherence to the doctrine above advanced, which we understand to be the general rule upon the subject, would preclude the application of the doctrine of *res ipsa loquitur* in this case. But apart from that rule of law, the facts in this record do not appear to us to present a proper case for the application of the doctrine. We cannot say from the proofs in this case that "the thing speaks for itself." The thought does not necessarily occur to the mind when the bursting of the gun is thought of, that the shell which was shot at the time was defective. Possibly the thought which would most readily occur to most persons is that the bursting of the barrel was due to some defect in the barrel, inherent or otherwise. One of the theories of plaintiff in error is that as the "blow out" occurred beyond the front end of the shell, it must have been caused by an obstruction in the barrel, which in some way found its way into it. There was no positive proof of an obstruction in the barrel, but the testimony of numerous ex-

perts introduced by plaintiff in error, showed that a very slight obstruction in a gun barrel might cause an explosion, when a shot was attempted to be fired from it. A number of shot guns, which plaintiff in error had caused to ·be experimented with in this manner, were introduced in evidence, showing breaks similar to that in the gun in question here. In fact in one instance, where the obstruction was placed a short distance beyond the shell the result of the firing of the shell occasioned a bursting of the barrel, which was almost identical in every particular in appearance with that shown by the gun which caused the injury. Persons were also introduced as witnesses who made shooting their occupation and who were expert shots, and also others who were engaged as a business in testing shells. These witnesses stated they had seen thousands upon thousands of shells fired and never knew of one bursting a gun barrel, unless there was an obstruction in the barrel.

Upon the whole case, we are of opinion that the facts even if taken most strongly against plaintiff in error, did not tend to make out a case entitling defendant in error to a recovery, and that the peremptory instructions offered by the former at the close of all the evidence, directing the jury to find it not guilty, should have been given.

The judgment of the court below will therefore be reversed.

*Reversed with finding of facts.*

Finding of facts to be incorporated in the judgment: We find the proofs in this case do not tend to establish the negligence charged against plaintiff in error in the declaration.